**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AMIE H. GARCIA, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No. 04-1159-MLB |
| ) | |
| THE ESTATE OF ROMEO ARRIBAS, ) | |
| M.D., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on a motion for partial summary judgment filed by defendant Ballard Aviation d/b/a Eagle Med. (Doc. 39.) The motion has been fully briefed and is ripe for decision. (Docs. 40, 53, 76.) This motion seeks an advisory opinion on a matter not properly before the court. Therefore, the motion is ordered STRICKEN, as more fully explained herein.

**I.  FACTS AND PROCEDURAL HISTORY**

This is essentially a continuation of a previous case, which was dismissed at the summary judgment stage. Garcia v. Polich, No. 00-1231-MLB, Doc. 383 (D. Kan. Jan. 30, 2004) (Garcia I). In that case, plaintiff invoked this court's subject matter jurisdiction based on a federal question arising under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. The court granted summary judgment to defendant St. Catherine Hospital on the EMTALA claim, and declined to exercise supplemental jurisdiction over the remainder of the case, which was based solely on state law claims related to medical malpractice. Garcia I. Subsequent to that ruling, the case was refiled with Traci Garcia's daughter, Amie Garcia, as the

plaintiff.  Amie resides in Texas; therefore, the case arises under federal diversity jurisdiction.

This case has a somewhat peculiar posture in that the parties have refiled several summary judgment motions from <u>Garcia I</u>.  Those motions were written in light of the pretrial order filed in <u>Garcia I</u>.  <u>Id.</u> (Doc. 323.)  By contrast, no pretrial order has been entered in the present case, and the complaint is the only document purporting to define the claims presented.  Nonetheless, several parties, including plaintiff and Eagle Med, continue to craft their arguments based on the claims and theories defined in the pretrial order from <u>Garcia I</u>.  This fact is crucial in deciding the present motion, because the complaint in the case at bar differs substantially from the pretrial order entered in <u>Garcia I</u>.  Nonetheless, although the complaint and legal theories behind the case may have changed, the facts are what they are.  Thus, unless otherwise noted, the following facts are based on <u>Garcia I</u>.[1]

Traci Garcia, plaintiff's decedent, had her third child by caesarian section on June 3, 1998 at Southwest Medical Center in Liberal, Kansas.  Mrs. Garcia was discharged to home and approximately one week later, she began to experience multiple problems. On the morning of June 13, she went to the emergency room at Hamilton County Hospital in Syracuse, Kansas.  Mrs. Garcia was admitted to Hamilton

---

[1] In relying on the facts found in <u>Garcia I</u>, the court expresses no opinion regarding whether <u>Garcia I</u> has any binding effect on this case.  Rather, for sake of convenience, the court simply recounts its own factual summary as provided in <u>Garcia I</u>.  It does not appear that these facts are seriously in dispute.  In any event, should any party feel that reliance on facts from <u>Garcia I</u> is misplaced, they are free to raise the issue when and if it becomes appropriate.

County Hospital by Dr. Romeo Arribas.

In the evening hours of June 13, Dr. Arribas contacted Dr. Ann Polich at St. Catherine Hospital in Garden City regarding Mrs. Garcia's situation. Dr. Arribas requested that Dr. Polich accept Mrs. Garcia for transfer to St. Catherine; however, Dr. Polich denied that request. (Doc. 65 at 2.) Instead, Dr. Polich told Dr. Arribas to send Mrs. Garcia directly to Wichita. This did not happen. Subsequently, Dr. Arribas called Dr. Polich again at approximately 2:00 a.m. on June 14. Dr. Arribas expressed his opinion that Mrs. Garcia could be cared for at St. Catherine. Dr. Polich agreed to accept Mrs. Garcia at St. Catherine upon her transfer from Hamilton County Hospital.

Mrs. Garcia arrived at St. Catherine at approximately 3:45 a.m. on June 14, where she was examined in the emergency room by William D. Strampel, D.O., an emergency room physician. Dr. Strampel's initial diagnosis was Adult Respiratory Distress Syndrome. He concluded that Mrs. Garcia's condition constituted an emergency and that she needed to be admitted or transferred. However, because Dr. Strampel was not authorized to admit or transfer Mrs. Garcia, that decision fell to the attending physician, Dr. Polich.

Dr. Strampel called Dr. Polich from the emergency room and reported the situation. Dr. Polich immediately came to the hospital, arriving at 4:20 a.m. She examined Mrs. Garcia, reviewed x-rays and available lab test results and spoke with Dr. Strampel. Both physicians recognized that Mrs. Garcia's situation presented an emergency medical condition. Plaintiff argues that Mrs. Garcia should have been intubated prior to transfer in order to stabilize Mrs.

Garcia's condition. Dr. Polich knew that if she elected to admit Mrs. Garcia, St. Catherine had the capability to intubate her. In Dr. Polich's opinion, however, Mrs. Garcia needed complex ventilator management which was not within the capability of St. Catherine. Plaintiff does not dispute Dr. Polich's judgment in this regard. Dr. Polich determined that Mrs. Garcia was stable and almost immediately ordered her transfer by air to Via Christi Hospital in Wichita. Via Christi agreed to accept Mrs. Garcia. There is no issue regarding Via Christi's capacity to treat Mrs. Garcia.

Dr. Polich prepared an acute transfer certificate, which stated that the transfer was based on "further pulmonary evaluation" and that the risks of transfer were "accident/death." Gregg Garcia, Traci's husband, was told by Dr. Polich that Mrs. Garcia could die. Gregg signed the consent section of the certificate which read:

### Consent to Transfer

> I hereby consent to transfer to another medical facility. I understand that it is the opinion of the physician responsible for my care that the benefits of transfer outweigh the risks of transfer. I have been informed of the risks and benefits upon which this transfer is being made. I have considered these risks and benefits and consent to transfer. I consent to the release of information to the receiving facility and physician as deemed necessary.

In order to effect the transfer, Dr. Polich contacted Eagle Med, an air ambulance service. Eagle Med apparently had an air ambulance at the Finney County Airport. The aircraft was manned by defendants Douglas Landgraf and Lawrence McGowan, both of whom were registered nurses and mobile intensive care technicians. Sometime around 5:00 a.m. on June 14, Polich spoke by telephone with Landgraf and Eagle Med's medical advisor, Dr. Sellberg. Polich informed Sellberg of

-4-

Traci's condition, after which Sellberg gave Landgraf certain orders regarding Traci's treatment during transport to Wichita. Thereafter, Traci Garcia was transported to Finney County Airport via EMS. (Doc. 42 at 5-6.)

From the airport, Traci was flown to Wichita aboard an Eagle Med aircraft. Unfortunately, during the flight she suffered a cardio-pulmonary arrest. Landgraf and McGowan attempted to intubate her, but were unable to secure an airway. They performed CPR on her for the remainder of the flight to Wichita, and the subsequent ground ambulance transport to Via Christi - St. Francis Hospital. Although Traci Garcia survived through June 14th, it appears that her brain function never returned. She was pronounced dead the following day. (Doc. 66 at 10.)

## II. ANALYSIS

Eagle Med seeks partial summary judgment on claims of negligent hiring, retention, and supervision of its employees, Sellberg, Landgraf, and McGowan. (Doc. 39.) In its brief, Eagle Med provides extensive argument on these claims, even asking the court to define the elements for a claim of negligent supervision - an apparent issue of first impression in Kansas. (Doc. 40 at 6.) Likewise, plaintiff presents a well-organized and thoughtful analysis of the law regarding these claims. However, the court notes that these briefs are essentially carbon copies of the same briefs submitted in <u>Garcia I</u>.

In that case, the pretrial order specifically enumerated claims

of negligent hiring, retention, and supervision.[2]  Garcia I, (Doc. 323 at 25.)  By contrast, the complaint in the case at bar fails to assert such a claim.  The first references to Eagle Med and its employees occurs on page three of the complaint, where the residency and credentials of Sellberg, Landgraf, and McGowan are listed, along with facts surrounding Eagle Med's corporate existence.  The next material reference to Eagle Med occurs at paragraphs 14-16, where Sellberg, Landgraf, and McGowan are all alleged to be employees and agents of Eagle Med.  Immediately thereafter, in paragraph 17, plaintiff makes the following allegations regarding Eagle Med:

> At all times material hereto, and to which reference is made herein, defendant Ballard Aviation, Inc., d/b/a Eagle Med, is a corporation owning, controlling and transacting business as an air ambulance provider.  Ballard Aviation, Inc., d/b/a Eagle Med, <u>has in its employ, or subject to its control, direction and supervision, among others, physicians, registered nurses, emergency medical technicians and other ambulance personnel over which it exercises control and supervision, with the right to employ, discharge and/or supervise and direct</u>.  The negligence and/or gross negligence and wanton conduct of such employees and/or agents is likewise the negligence and/or gross negligence and wanton conduct of defendant Ballard Aviation, Inc., d/b/a Eagle Med.

(Doc. 1 at 5 (emphasis added).)  The emphasized phrases are the only reference in the entire complaint to facts that might support claims of negligent hiring, retention, and supervision; however, this statement alleges only that Eagle Med had authority to control and

---

[2] Eagle Med objected to the inclusion of these claims in the Garcia I pretrial order.  (Doc. 323 at 25, 69.)  However, the court granted summary judgment against the Garcia I plaintiff on the sole federal claim, and declined to rule on any state law matters.  Thus, this issue is not a surprise to plaintiff.

-6-

supervise, not that Eagle Med failed to do so.  The sentence following the highlighted portion clearly helps establish plaintiff's claim that Eagle Med is vicariously liable for the torts of its employees and agents.

Plaintiff labels her first cause of action as "Negligence."  Id. at 6.  In the subsequent paragraphs of her complaint, she recounts the relevant facts leading up to Traci Garcia's demise, none of which allege any acts or omissions of Eagle Med, other than through Sellberg, Landgraf, and McGowan.  Id. at 6-8.  Then, in paragraph 28, plaintiff attempts to state her negligence claim as follows:

> Defendants Polich, Strampel, Sellberg, Arribas, Landgraf, McGowan, Hamilton County Hospital and Ballard Aviation, Inc., d/b/a Eagle Med, departed from standard approved medical, emergency room, resuscitative, nursing and transport practices and were otherwise negligent in their care and treatment of decedent Traci Rhea Garcia.  Said defendants, and each of them, were negligent, careless and deviated from standard approved medical, emergency room, resuscitative, nursing and transport practices in their diagnosis, examination, screening, evaluation, treatment, monitoring, resuscitation, stabilization, transfer and other care and treatment provided to decedent Traci Rhea Garcia. Defendants Sellberg, Landgraf, McGowan and Ballard Aviation, Inc., d/b/a Eagle Med, were in fact grossly negligent.

Id. at 8.  In this paragraph, plaintiff goes to painstaking lengths to specifically state every perturbation of medical negligence that might be plausible under these facts.  However, nowhere in this paragraph, nor anywhere in the section committed to her first cause of action, does plaintiff even remotely suggest that she is accusing Eagle Med of being negligent in its hiring, supervision, or retention of Sellberg, Landgraf, or McGowan.  Rather, it is clear from the text that the only claim against Eagle Med stated in this section is for

-7-

vicarious liability as the employer of Sellberg, Landgraf, and McGowan.

For her next cause of action, plaintiff alleges that Eagle Med and its employees were grossly negligent and wanton in their treatment of Traci Garcia. Id. at 9. The purpose of this claim, as discussed in a previous order, was to circumvent the immunity granted emergency workers by K.S.A. 65-6124. (Doc. 98.) In this section of the complaint, plaintiff merely rehashes and summarizes her statements under the negligence claim, but argues that the actions of these particular defendants was grossly negligent and wanton. Again, however, there is no claim of direct liability against Eagle Med. Rather, it is clear that any liability on the part of Eagle Med lies under the theory of respondeat superior.

While Fed. R. Civ. P. 8(a) requires only notice pleading, it is axiomatic that the pleading must, in fact, give notice. Green Country Food Mkt., Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279 (10th Cir. 2004) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). This complaint falls short of that mark. Although plaintiff is not required to state and develop in her complaint every legal theory on which she hopes to recover, see id., she must allege sufficient facts to support her claims for negligent hiring, retention, and supervision. See Mountain View Pharmacy v. Abbott Labs., 630 F.2d 1383, 1388 (10th Cir. 1980). By contrast, the complaint fails to allege any facts that would show Eagle Med was negligent in the hiring, training, or supervision of any of its employees. For example, the complaint fails to allege any deficiencies in the credentials, experience, or training of any Eagle

-8-

Med employee prior to hiring, any deficiencies in the training or performance or any Eagle Med employee during their employment with Eagle Med, or any similar facts that would support a claim for direct liability against Eagle Med.[3]  For reasons that the court may never know, plaintiff apparently decided to change tack from Garcia I and forego claims of negligent hiring, retention, and supervision against Eagle Med.  That is her prerogative.

However, having failed to state those claims in her complaint, plaintiff has removed it from this court's subject matter jurisdiction.  Pursuant to the case or controversy requirement found in Article III section 2 of the Constitution, a federal court may not render advisory opinions. Wirsching v. Colorado, 360 F.3d 1191, 1196 (10th Cir. 2004).  In determining whether a live controversy exists, courts look to facts that have been alleged.  See Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1274 (10th Cir. 1989) (citing Md. Cas. Co. v. Pac. Oil & Coal Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)).  Since the facts alleged in the complaint fail to support a claim of negligent hiring, retention, or supervision, any ruling by this court would be advisory in nature.  The concern is even more heightened in the present matter because, according to Eagle Med, the court would have to define the elements of a claim of negligent supervision - a matter of first impression in Kansas. (Doc. 40 at 6.)  For these reasons, Eagle Med's motion was improvidently filed, and

---

[3] Similarly, even her response brief in the present motion lacks details of Eagle Med's allegedly negligent acts or omissions in hiring, retaining, or supervising its employees. The only deficiency that she identifies is that Landgraf and McGowan lacked training and experience in using Valium during intubation. (Doc. 53 at 12.)  She fails to identify any deficiencies related to Sellberg.

-9-

shall be STRICKEN.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   21st   day of March 2005, at Wichita, Kansas.


s/   Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE

-10-