## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

AMIE H. GARCIA,                          )
                                         )
                    Plaintiff,           )        **CIVIL ACTION**
                                         )
v.                                       )        No.  04-1159-MLB
                                         )
THE ESTATE OF ROMEO ARRIBAS,             )
M.D., et al.,                            )
                                         )
                    Defendants.          )
_____)

### MEMORANDUM AND ORDER

This case comes before the court on a motion for partial summary judgment filed by defendant Ballard Aviation d/b/a Eagle Med.  (Doc. 45.)  The motion has been fully briefed and is ripe for decision. (Docs. 46, 54, 77.)  Eagle Med asks the court to rule that the immunity for ordinary negligence granted certain emergency medical workers under K.S.A. 65-6124 also extends to those who employ immune emergency workers.  This is a matter of first impression.  The court concludes that the immunity granted under K.S.A. 65-6124 does not extend to employers.  Accordingly, Eagle Med's motion is DENIED.

**I.  FACTS AND PROCEDURAL HISTORY**

This is essentially a continuation of a previous case, which was dismissed at the summary judgment stage.  Garcia v. Polich, No. 00-1231-MLB, Doc. 383 (D. Kan. Jan. 30, 2004) (Garcia I).  In that case, plaintiff invoked this court's subject matter jurisdiction based on a federal question arising under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.  The court granted summary judgment to defendant St. Catherine Hospital on the EMTALA claim, and declined to exercise supplemental jurisdiction over the

remainder of the case, which was based solely on state law claims related to medical malpractice. _Garcia I_. Subsequent to that ruling, the case was refiled with Traci Garcia's daughter, Amie Garcia, as the plaintiff. Amie resides in Texas; therefore, the case arises under federal diversity jurisdiction. Unless otherwise noted, the following facts are based on _Garcia I_.[1]

Traci Garcia, plaintiff's decedent, had her third child by caesarian section on June 3, 1998 at Southwest Medical Center in Liberal, Kansas. Mrs. Garcia was discharged to home and approximately one week later, she began to experience multiple problems. On the morning of June 13, she went to the emergency room at Hamilton County Hospital in Syracuse, Kansas. Mrs. Garcia was admitted to Hamilton County Hospital by Dr. Romeo Arribas.

In the evening hours of June 13, Dr. Arribas contacted Dr. Ann Polich at St. Catherine Hospital in Garden City regarding Mrs. Garcia's situation. Dr. Arribas requested that Dr. Polich accept Mrs. Garcia for transfer to St. Catherine; however, Dr. Polich denied that request. (Doc. 65 at 2.) Instead, Dr. Polich told Dr. Arribas to send Mrs. Garcia directly to Wichita. This did not happen. Subsequently, Dr. Arribas called Dr. Polich again at approximately 2:00 a.m. on June 14. Dr. Arribas expressed his opinion that Mrs. Garcia could be cared for at St. Catherine. Dr. Polich agreed to

---

[1] In relying on the facts found in _Garcia I_, the court expresses no opinion regarding whether _Garcia I_ has any binding effect on this case. Rather, for sake of convenience, the court simply recounts its own factual summary as provided in _Garcia I_. It does not appear that these facts are seriously in dispute. In any event, should any party feel that reliance on facts from _Garcia I_ is misplaced, they are free to raise the issue when and if it becomes appropriate.

accept Mrs. Garcia at St. Catherine upon her transfer from Hamilton County Hospital.

Mrs. Garcia arrived at St. Catherine at approximately 3:45 a.m. on June 14, where she was examined in the emergency room by William D. Strampel, D.O., an emergency room physician.  Dr. Strampel's initial diagnosis was Adult Respiratory Distress Syndrome.  He concluded that Mrs. Garcia's condition constituted an emergency and that she needed to be admitted or transferred.  However, because Dr. Strampel was not authorized to admit or transfer Mrs. Garcia, that decision fell to the attending physician, Dr. Polich.

Dr. Strampel called Dr. Polich from the emergency room and reported the situation.  Dr. Polich immediately came to the hospital, arriving at 4:20 a.m.  She examined Mrs. Garcia, reviewed x-rays and available lab test results and spoke with Dr. Strampel.  Both physicians recognized that Mrs. Garcia's situation presented an emergency medical condition.  Plaintiff argues that Mrs. Garcia should have been intubated prior to transfer in order to stabilize Mrs. Garcia's condition.  Dr. Polich knew that if she elected to admit Mrs. Garcia, St. Catherine had the capability to intubate her.  In Dr. Polich's opinion, however, Mrs. Garcia needed complex ventilator management which was not within the capability of St. Catherine.  Plaintiff does not dispute Dr. Polich's judgment in this regard.  Dr. Polich determined that Mrs. Garcia was stable and almost immediately ordered her transfer by air to Via Christi Hospital in Wichita.  Via Christi agreed to accept Mrs. Garcia.  There is no issue regarding Via Christi's capacity to treat Mrs. Garcia.

Dr. Polich prepared an acute transfer certificate, which stated

-3-

that the transfer was based on "further pulmonary evaluation" and that the risks of transfer were "accident/death." Gregg Garcia, Traci's husband, was told by Dr. Polich that Mrs. Garcia could die. Gregg signed the consent section of the certificate which read:

### Consent to Transfer

> I hereby consent to transfer to another medical facility. I understand that it is the opinion of the physician responsible for my care that the benefits of transfer outweigh the risks of transfer. I have been informed of the risks and benefits upon which this transfer is being made. I have considered these risks and benefits and consent to transfer. I consent to the release of information to the receiving facility and physician as deemed necessary.

In order to effect the transfer, Dr. Polich contacted Eagle Med, an air ambulance service. Eagle Med apparently had an air ambulance at the Finney County Airport. The aircraft was manned by defendants Douglas Landgraf and Lawrence McGowan, both of whom were registered nurses and mobile intensive care technicians. Sometime around 5:00 a.m. on June 14, Polich spoke by telephone with Landgraf and Eagle Med's medical advisor, Dr. Sellberg. Polich informed Sellberg of Traci's condition, after which Sellberg gave Landgraf certain orders regarding Traci's treatment during transport to Wichita. Thereafter, Traci Garcia was transported to Finney County Airport via EMS. (Doc. 42 at 5-6.)

From the airport, Traci was flown to Wichita aboard an Eagle Med aircraft. Unfortunately, during the flight she suffered a cardio-pulmonary arrest. Landgraf and McGowan attempted to intubate her, but were unable to secure an airway. They performed CPR on her for the remainder of the flight to Wichita and the subsequent ground ambulance transport to Via Christi - St. Francis Hospital. Although Traci

Garcia survived through June 14th, it appears that her brain function never returned.  She was pronounced dead the following day.  (Doc. 66 at 10.)

## II.  SUMMARY JUDGMENT STANDARD: FRCP 56

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III.  ANALYSIS

In a prior order, the court concluded that K.S.A. 65-6124 grants Dr. Sellberg immunity from liability for any ordinary negligence arising out of his involvement in Traci Garcia's death.  (Doc. 98.) The question presented in Eagle Med's motion is whether the immunity granted under K.S.A. 65-6124 also extends to the employers of immune

emergency medical workers.  That statute provides as follows:

(a)  No physician, physician's assistant or licensed professional nurse, who gives emergency instructions to a mobile intensive care technician, emergency medical technician-defibrillator or emergency medical technician-intermediate during an emergency, shall be liable for any civil damages as a result of issuing the instructions, except such damages which may result from gross negligence in giving such instructions.

(b)  No mobile intensive care technician, emergency medical technician-defibrillator or emergency medical technician-intermediate who renders emergency care during an emergency pursuant to instructions given by a physician, the responsible physician for a physician's assistant or licensed professional nurse shall be liable for civil damages as a result of implementing such instructions, except such damages which may result from gross negligence or by willful or wanton acts or omissions on the part of such mobile intensive care technician, emergency medical technician-defibrillator or emergency medical technician-intermediate rendering such emergency care.

(c)  No first responder who renders emergency care during an emergency shall be liable for civil damages as a result of rendering such emergency care, except for such damages which may result from gross negligence or from willful or wanton acts or omissions on the part of the first responder rendering such emergency care.

(d)  No person certified as an instructor-coordinator and no training officer shall be liable for any civil damages which may result from such instructor-coordinator's or training officer's course of instruction, except such damages which may result from gross negligence or by willful or wanton acts or omissions on the part of the instructor-coordinator or training officer.

(e)  No medical adviser who reviews, approves and monitors the activities of attendants shall be liable for any civil damages as a result of such review, approval or monitoring, except such damages which may result from gross negligence in such review, approval or monitoring.

The plain language of the statute only encompasses certain emergency medical workers, not their employers. Nonetheless, Eagle Med argues that, since the employer's liability is derivative and secondary to that of the employee, if the employee is not liable then the employer cannot be liable. (Doc. 46 at 3.)

"A federal court sitting in diversity must apply state law as propounded by the forum's highest court. Absent controlling precedent, the federal court must attempt to predict how the state's highest court would resolve the issue." Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1180 (10th Cir. 2005) (citations omitted). No reported Kansas case addresses the question presented in Eagle Med's motion. Therefore, the court must attempt to predict how the Kansas Supreme Court would decide the matter.

In support of its position, Eagle Med asserts that K.S.A. 65-6124 absolves Sellberg of liability for ordinary negligence under the facts of this case. Therefore, since Kansas law holds that an employer has no vicarious liability when its employee is not liable, Eagle Med argues that it cannot be held vicariously liable for Sellberg's negligence. Plaintiff counters that, when an employee is immune from liability, the rule adopted by a majority of states is that the immunity is personal to the employee and does not inure to the employer's benefit. She further argues that the Kansas Supreme Court has implicitly adopted this rule. Finally, she asserts that the legislature never intended to extend immunity to the employers of emergency medical workers.

In order to decide this matter, the court must construe the terms of K.S.A. 65-6124 to determine whether it operates to grant

immunity to the employers of emergency medical workers. Then, assuming that the statute fails to confer such immunity by its own terms, the court must decide whether the immunity conferred on the emergency medical workers nonetheless protects their employers based on the law of agency.

"The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained." <u>Trees Oil Co. v. State Corp. Comm'n</u>, ___ Kan. ___, 105 P.3d 1269, 1282 (2005) (quoting <u>Williamson v. City of Hays</u>, 275 Kan. 300, 305, 64 P.3d 364 (2003)). The first step in construing any statute is to consider the plain language used therein. <u>See</u> <u>State v. Manbeck</u>, 277 Kan. 224, 227, 83 P.3d 190, 193 (2004). If the language is clear and unambiguous, then it is presumed to accurately reflect the legislature's intent, <u>Trees Oil</u>, 105 P.3d at 1282; accordingly, resort to further rules of statutory construction is neither necessary nor appropriate. <u>See</u> <u>In re Marriage of Rodriguez</u>, 266 Kan. 347, 352, 969 P.2d 880, 884 (1998). The legislature is not a ward of the courts. Thus, courts should not use additional canons of construction to change the meaning of otherwise unambiguous statutes in order to suit the policy preferences of the judiciary. <u>See</u> <u>State v. McCurry</u>, ___Kan. ___, 105 P.3d 1247, 1250 (2005).

Nonetheless, plaintiff argues that in analyzing the plain language of K.S.A. 65-6124, its terms should be strictly construed. (Doc. 54 at 8.) She bases this assertion on the common law rule that statutes in derogation of the common law should be strictly construed. <u>Id.</u> However, that rule was abolished in Kansas almost 150 years ago.

See <u>Bd. of County Comm'rs of Neosho County ex rel. Bd. of Trs., Neosho</u>
<u>Mem'l Hosp. v. Cent. Air Conditioning Co.</u>, 235 Kan. 977, 981, 683 P.2d
1282, 1285 (1984).  According to General Statutes of 1868, chapter
119, section 3,

> The common law as modified by constitutional and
> statutory law, judicial decisions, and the
> conditions and wants of the people, shall remain
> in force in aid of the General Statutes of this
> state; <u>but the rule of the common law, that</u>
> <u>statutes in derogation thereof shall be strictly</u>
> <u>construed, shall not be applicable to any general</u>
> <u>statute of this state, but all such statutes</u>
> <u>shall be liberally construed to promote their</u>
> <u>object</u>.

<u>Neosho Mem'l Hosp.</u>, 235 Kan. at 981, 683 P.2d at 1285 (quoting Gen.
Stat. 1868, ch. 119, § 3 (emphasis added)).  This statute was re-
enacted at various times, and is now codified at K.S.A. 77-109.  The
wording of the statute has never changed.  Indeed, case law spanning
three centuries has recognized K.S.A. 77-109 and its predecessors as
the law of Kansas.  <u>See, e.g.,</u> <u>City of Haven v. Gregg</u>, 244 Kan. 117,
122-23, 766 P.2d 143, 147 (1988); <u>Jones v. Garrett</u>, 192 Kan. 109, 113,
386 P.2d 194, 198 (1963); <u>Stringer v. Calmes</u>, 167 Kan. 278, 283, 205
P.2d 921, 925 (1949); <u>Williams v. Cities Serv. Gas Co.</u>, 139 Kan. 166,
170, 30 P.2d 97, 99 (1934); <u>Aetna Life Ins. Co. v. Swayze</u>, 30 Kan.
118, 123, 1 P. 36, 40 (1883); <u>State v. Stokes</u>, 2004 WL 794449, at *7
(Kan. Ct. App. Apr. 9, 2004).

Despite the decades-old abrogation of this common law relic,
plaintiff's confusion over the matter is understandable.  For reasons
that are not clear, the Kansas Supreme Court has occasionally relied
on the rule of strict construction for statutes in derogation of the
common law.  In each of these cases, the Kansas Supreme Court failed

to make any mention of K.S.A. 77-109, thus leaving readers to wonder why its statutory mandate was ignored.  In any event, the court finds that the cases in which K.S.A. 77-109 was not applied are essentially limited two categories: 1) construing certain criminal statutes, <u>see, e.g.</u>, <u>McCurry</u>, 105 P.3d at 1250; <u>State v. Floyd</u>, 218 Kan. 764, 766-67, 544 P.2d 1380, 1382-83 (1976); and 2) determining the scope of certain evidentiary privileges.  <u>See, e.g.</u>, <u>State v. Berberich</u>, 267 Kan. 215, 224, 978 P.2d 902, 909 (1999); <u>Adams v. St. Francis Reg'l Med. Ctr.</u>, 264 Kan. 144, 162, 955 P.2d 1169, 1180-81 (1998); <u>State v. George</u>, 223 Kan. 507, 510, 575 P.2d 511, 515 (1978); <u>Armstrong v. Topeka Ry. Co.</u>, 93 Kan. 493, 503, 144 P. 847, 850 (1914).  The case at bar fits into neither of these categories.

<u>Nova Stylings, Inc. v. Red Roof Inns, Inc.</u> 242 Kan. 318, 747 P.2d 107 (1987), may be the one exception to the above categorizations that is relevant to this motion.  In <u>Nova Stylings</u>, the Kansas Supreme Court addressed the question of whether K.S.A. 36-402, a guest statute, granted innkeepers immunity for ordinary negligence related to the care of guests' property.  In deciding that question, the court said,

> The plaintiff is correct that statutes in derogation of common-law rights should be strictly construed; however, that is not a license for this court to ignore the plain and unambiguous wording of the statute.  Such statutes cannot be so strictly construed as to violate the plain meaning of the statute.

<u>Id.</u> at 321, 747 P.2d at 110.  The court cited no authority for the proposition that the old common law rule had been resurrected, and likewise failed to address the applicability of K.S.A. 77-109.  In any event, the balance of the quote from <u>Nova Stylings</u> counsels against

-10-

strict construction when the statute is plain and unambiguous, as K.S.A. 65-6124 most certainly is. Therefore, the court will follow K.S.A. 77-109 and give the statute a liberal construction as necessary to achieve the legislature's policy goals.

Applying these rules to K.S.A. 65-6124, the court finds that its language is plain and unambiguous. The statute clearly grants immunity to specific emergency medical workers under particular circumstances. There is not even a hint that the legislature intended to extend immunity to the employers of immune workers. While the court concludes that the statute must be liberally construed, that does not mean the court is free to add words that are not implied by the balance of the statutory text.

If, as Eagle Med suggests, the court were to conclude that the policy goals underlying section 6124 required that employers also be absolved of liability for the ordinary negligence of their emergency medical personnel employees, that would mean the court must construe the statute to extend immunity to an entirely different class of persons than those expressly contemplated by the statute. Such a conclusion flies in the face of the very reasons for which respondeat superior liability was recognized. "The theory behind the common-law doctrine of vicarious liability was that the employer should be liable for the employee's negligence to assure that an innocent injured third party would not have to suffer the loss due to the inability of the tortfeasor employee to respond in damages." Bair v. Peck, 248 Kan. 824, 843, 811 P.2d 1176, 1190 (1991). Thus, vicarious liability represents a policy choice that, as between an innocent victim and the otherwise innocent employer of a tortfeasor, the latter should bear

-11-

the risk that the tortfeasor is incapable of satisfying any judgment arising from his negligence. See Bright v. Cargill, Inc., 251 Kan. 387, 406, 837 P.2d 348, 363 (1992) (citing Strait v. Hale Constr. Co., 26 Cal. App. 3d 941, 103 Cal. Rptr. 487 (1972)). The employer is better positioned than the victim to mitigate those risks by diligently selecting and training its employees, purchasing liability insurance, and passing on the added costs to its customers.

The principle that employers are vicariously liable for the torts of their employees occurring within the scope of that employment has been the established law of this state since at least 1876. Hudson v. Mo., K. & T. Ry. Co., 16 Kan. 470, 472-73 (1876). It is reasonable to assume that the legislature was aware that many, if not all, of the emergency medical workers designated in section 65-6124 would be employees. In order to accept Eagle Med's argument, the court would have to assume that the legislature implicitly abrogated such a well-established rule of law without once mentioning the word "employer" in K.S.A. 65-6124. Accordingly, the court rejects Eagle Med's invitation to construe section 65-6124 as directly extending immunity to the employers of the emergency medical workers addressed in that statute.

Be that as it may, the question still remains whether the law of agency acts to preclude vicarious liability for the employers of immune workers. Eagle Med argues that, even if K.S.A. 65-6124 does not directly confer immunity on employers of immune emergency medical workers, Kansas agency law effectively makes the employer immune. (Doc. 46 at 3-4.) In support of that theory, Eagle Med cites Simpson v. Townsley, 283 F.2d 743, 746 (10th Cir. 1960), and Jacobsen v.

-12-

<u>Parrill</u>, 186 Kan. 467, 473, 351 P.2d 194, 199 (1960), for their general statements regarding the doctrine of respondeat superior. (Doc. 98 at 3.)   From there, and without citing any additional supporting authority, Eagle Med states, "It is thus firmly established Kansas law that where the agent is not liable, the principal has no vicarious liability."  <u>Id.</u>

At first blush, Eagle Med's proposition appears sound.  However, a review of the cases on which Eagle Med relies casts considerable doubt on the accuracy of its conclusion.  <u>Jacobsen</u> merely held that satisfaction of a judgment against an agent-tortfeasor extinguishes the derivative liability of an otherwise innocent principal. <u>Jacobsen</u>, 186 Kan. at 474, 351 P.2d at 200.  <u>Simpson</u> concluded that a valid covenant not to directly sue a tortfeasor likewise barred suit against the tortfeasor's employers, inasmuch as a judgment based solely on the employer's vicarious liability would allow the employer to recover from the tortfeasor, thereby circumventing the covenant not to sue and rendering it a nullity.  <u>Simpson</u>, 283 F.2d at 748. Continuing, Eagle Med cites <u>Atkinson v. Wichita Clinic, P.A.</u>, 243 Kan. 705, 707, 763 P.2d 1085, 1087 (1988) for the proposition that when a plaintiff releases the tortfeasor-employee, the employer is also relieved of liability.

Collectively, all these cases (and a few others cited by Eagle Med) stand for the proposition that when an employee is not negligent, when a judgment against the employee has been satisfied, or when the plaintiff foregoes litigation against the employee, either by release or covenant not to sue, the employer is not liable.  These results satisfy common sense and the ends of justice.  When an employee is not

negligent, there is obviously no basis to hold his employer derivatively liable. Similarly, when the employee-tortfeasor has satisfied a judgment, there is no basis for further action against the employer because the employer's liability cannot exceed that of its employee.[2] See Jacobson, 186 Kan. at 474, 351 P.2d at 200. Finally, in the case of a release or a covenant not to sue, the plaintiff has voluntarily relinquished her claims against the tortfeasor, presumably in exchange for something of value. In all these cases, the plaintiff has either received what she is due, or has otherwise voluntarily relinquished her claims. By contrast, in a case where an employee-tortfeasor holds immunity, the plaintiff remains unsatisfied. She has been wronged, but is legally prohibited from recovering against the wrongdoer. Thus, the reasoning of Simpson, Jacobsen, and Atkinson fails to address the tensions that arise when the tortfeasor enjoys immunity from suit.

Plaintiff argues that, if faced with the question presented here, the Kansas Supreme Court would adopt the rule set forth in Restatement (Second) of Agency § 217(b)(ii), which states,

> In an action against a principal based on the conduct of a servant in the course of employment . . . [t]he principal has no defense because of the fact that . . . the agent had an immunity from civil liability as to the act.

If this provision were the law in Kansas, it would clearly foreclose Eagle Med's argument that the employer benefits from its employee's immunity. Both parties argue that Bright v. Cargill supports their

---

[2] This assumes, of course, that the sole basis for holding the employer liable is for the acts of the employee, rather than for the employer's own tortious conduct. That assumption applies throughout this discussion and, for brevity's sake, will not be repeated.

reading of the law. <u>Bright</u> was a personal injury case involving workers compensation laws. <u>Bright</u>, 251 Kan. at 389, 837 P.2d at 353. Bright was employed by an independent contractor making major repairs at a Cargill, Inc. facility. <u>Id.</u> at 391, 837 P.2d at 354. While working at the Cargill plant, Bright was severely injured due to the malfeasance of Nanny. <u>Id.</u> Nanny was employed by LSI, a company that provided temporary unskilled laborers to Cargill. <u>Id.</u> at 391, 837 P.2d at 355. Among the issues in <u>Bright</u> was whether Bright and Nanny, though employed by separate companies, were considered co-employees of Cargill. If so, Nanny would be immune from Bright's negligence claim under the relevant provision of Kansas' Workers Compensation Act, K.S.A. 44-501 <u>et.</u> <u>seq.</u> <u>Id.</u> at 412-13, 837 P.2d at 367. LSI argued that if Nanny was immune, then LSI should benefit from that immunity, since LSI's liability was merely derivative. <u>Id.</u>

The court rejected LSI's argument, concluding that any immunity granted Nanny by the workers compensation act was personal to him, and did not inure to the benefit of his employer. <u>Id.</u> at 415, 837 P.2d at 368. In further support of that holding, the Kansas Supreme Court concluded that the immunity granted employers under the workers compensation act was in exchange for their contributions to the workers compensation fund, from which the injured employee was paid. Since LSI had never paid into the fund on Bright's behalf, LSI was not entitled to immunity under the act. <u>See id.</u>

Eagle Med argues that <u>Bright</u> supports its position because this was the perfect opportunity for the Kansas Supreme Court to adopt Restatement (Second) of Agency § 217; yet, the court did not even mention that section of the Restatement. (Doc. 77 at 4.)

-15-

Accordingly, Eagle Med argues, the Kansas Supreme Court implicitly rejected section 217 based on the otherwise tortuous path it took to resolve this question. Id. The court disagrees. Bright developed in the complex setting of workers compensation laws, which are quite different, in many respects, from the laws pertaining to the liability of employers to third parties. Rather than adopt a general statement regarding immunity of principals and agents, Bright shows that the Kansas Supreme Court specifically sought out cases dealing with personal injury claims arising in a workers compensation framework. In so doing, the court cited similar cases from California and Michigan that dealt with the precise question of whether employers faced with vicarious liability, but who had no workers compensation liability to the injured employee, would nonetheless be immune from suit under workers compensation laws. See Bright, 251 Kan. at 414-15, 837 P.2d at 368 (citing Marsh v. Tilley Steel Co., 26 Cal. 3d 486, 162 Cal. Rptr. 320, 606 P.2d 355 (1980); Kenyon v. 2d Precinct Lounge, 177 Mich. App. 492, 442 N.W.2d 696 (1989)). The court concludes that Bright simply represents an appropriate judicial reluctance to pronounce general rules of law when more specific guidance is available and effective.

On the other hand, Bright does reveal two points that are instructive in deciding the present motion. First, Bright states that the statutory immunity granted employees under the Workers Compensation Act was personal to the employee, and therefore did not shield the employer from vicarious liability. Bright, 251 Kan. at 415, 837 P.2d at 368. Additionally, Bright reflects a narrow view of the immunity granted employers under that statute, stating, "If the

-16-

tortfeasor is not the plaintiff's employer or co-employee, the statutes by necessary implication reserve for plaintiff his tortious remedy against defendant," and, "[T]he immunity granted by the workers' compensation act is personal and does not purport to grant derivative immunity to general employers in the position of [LSI]." Id. at 414-15, 837 P.2d at 368 (quoting Marsh, 26 Cal. 3d at 496, 162 Cal. Rptr. 320, 606 P.2d 355; Kenyon, 177 Mich. App. at 503, 442 N.W.2d 696).   Here, as in Bright, the statute at issue does not expressly extend immunity to the employers of immune workers.

Turning to other jurisdictions for further guidance, the court notes that many have either expressly adopted the rule from Restatement (Second) of Agency § 217, or have crafted their own rules that are essentially the same as that of the Restatement.   See, e.g., Napier v. Town of Windham, 187 F.3d 177, 191 (1st Cir. 1999) (noting that Maine followed Restatement (Second) of Agency § 217); Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1375 (3d Cir. 1993) (citing the Restatement rule and noting that such was the law in Pennsylvania); Davis v. Harrod, 407 F.2d 1280, 1284 (D.C. Cir. 1969) (applying the Restatement rule to the District of Columbia); Schimpf v. Gerald, Inc., 2 F. Supp. 2d 1150, 1160 (E.D. Wis. 1998) (analogizing Wisconsin law with the Restatement view); Berard v. McKinnis, 699 A.2d 1148, 1152 n.9 (Me. 1997) (adopting, approving, or favorably citing Restatement (Second) of Agency § 217(b)(ii)); Estate of Dean by Dean v. Air Exec, Inc., 534 N.W.2d 103, 105 n.1 (Iowa 1995) (same); Gilbert v. Richardson, 264 Ga. 744, 753-54, 452 S.E.2d 476, 483-84 (1994) (same); Adams v. Peoples, 18 Ohio St. 3d 140, 142-43, 480 N.E.2d 428, 431 (1985) (same); Langley v. Nat'l Lead Co., 666

-17-

S.W.2d 343, 345 (Tex. Ct. App. 1984) (same); <u>D.C. Rent-a-Car Co. v.</u>
<u>Cochran</u>, 463 A.2d 696, 699 (D.C. 1983) (same); <u>Trotti v. Piacente</u>, 99
R.I. 167, 170, 206 A.2d 462, 463-64 (1965) (same); <u>May v. Palm Beach</u>
<u>Chem. Co.</u>, 77 So. 2d 468, 472 (Fla. 1955) (same); <u>Hamburger v. Henry</u>
<u>Ford Hosp.</u>, 91 Mich. App. 580, 589, 284 N.W.2d 155, 159 (1979)
(adopting rule essentially the same as the Restatement).  Indeed,
several of these cases have noted that the Restatement position
represents the rule in a majority of jurisdictions.  <u>See, e.g.,</u> <u>Davis</u>,
407 F.2d at 1284; <u>Adams</u>, 18 Ohio St. 3d at 142-43, 480 N.E.2d at 431;
<u>Langley</u>, 666 S.W.2d at 345; <u>see also</u> Restatement (Second) of Agency
§ 217 cmt. b.  The rationale for the Restatement view is well stated
in <u>Davis</u>:

> We think it is a sound starting point because an
> immunity from liability does not mean that a
> person did not commit a negligent, harmful act.
> It only means that for certain policy reasons
> liability is precluded against that person. In
> the interest of compensation to the victim, it
> should not be presumed that the immunity from
> liability given to the negligent person is
> carried over to others whom the victim can sue.
> Rather, the presumption should be the other way.
> Thus, unless the purpose of the immunity would be
> thwarted by carrying it over to others, suit
> against the others will lie.

<u>Davis</u>, 407 F.2d at 1284.

In a case which bears considerable resemblance to this case, the
Pennsylvania Supreme Court determined that a similar statute granting
immunity to emergency medical workers did not insulate their employers
from liability.  <u>Regester v. County of Chester</u>, 568 Pa. 410, 797 A.2d
898 (2002).  In <u>Regester</u>, paramedics were dispatched to aid a cardiac
arrest victim.  <u>Id.</u> at 412-13, 797 A.2d at 899-900.  Unfortunately,
the EMS driver failed to follow the right directions to the scene.

Id.  As a result of the delay, the victim died.  Id.  The victim's estate and his family members sued, among others, the hospital that employed the paramedics.  Id.  The hospital claimed immunity based on a statute that mimics K.S.A. 65-6124.  Id. at 414 n.3, 797 A.2d at 900.  Like the Kansas immunity provision, the Pennsylvania statute expressly immunized certain emergency medical workers from claims of ordinary negligence; however, like the Kansas law, the Pennsylvania statute was silent regarding the employers of immune workers.

In deciding the matter, the Pennsylvania Supreme Court first concluded that the plain language of the statute immunized only the emergency medical workers, not their employers.  Id. at 421-24; 797 A.2d at 905-06.  Then, in rebuffing the hospital's claim that the workers' immunity insulated their employer, the court noted that Pennsylvania follows Restatement (Second) of Agency § 217; therefore, the immunity granted emergency medical personnel under the Pennsylvania statute was personal to the employees, and did not inure to the benefit of their employer.  Id.

In contrast to Regester and the abundance of cases cited supra, Eagle Med principally relies on a Nebraska case, Wicker v. City of Ord, 233 Neb. 705, 447 N.W.2d 628 (1989).  In Wicker, the Nebraska Supreme Court interpreted a statute similar to K.S.A. 65-6124, and concluded that the immunity granted emergency workers by the Nebraska law did insulate their employers.  Id. at 711, 447 N.W.2d at 633.  In so concluding, the Nebraska court relied on its own case law, which reflected the minority view that the immunity of an agent also immunized the principal.  Id. at 709-11, 447 N.W.2d at 632-33.  Unlike Nebraska, the Kansas Supreme Court would be writing on a fairly clean

slate if it were to decide this matter.  To the extent Kansas has any case law to guide its decision, it would be <u>Bright</u>'s holding that, in a workers compensation setting, the immunity of an employee does not insulate his employer.  The court finds that, although the Nebraska statute is similar to the K.S.A. 65-6124, the Kansas Supreme Court would not be inclined to follow <u>Wicker</u> in light of the case law supporting the Restatement view previously discussed.

Eagle Med also cites a handful of other cases which purport to agree with Eagle Med's view of the law; however, they are not persuasive.  In <u>Sharp v. Town of Highland</u>, 665 N.E.2d 610 (Ind. Ct. App. 1996), the Indiana Court of Appeals held that an employee's immunity from liability likewise shielded his employer.  <u>Id.</u> at 615. However, the Indiana court failed to cite a single authority for its proposition, and gave the matter no serious discussion.  <u>Id.</u>  Eagle Med also points to <u>Davis v. Grinspoon</u>, 212 Ill. App. 3d 282, 285, 570 N.E.2d 1242, 1244 (Ill. App. Ct. 1991), <u>overruled on other grounds by Paterson v. Lauchner</u>, 294 Ill. App. 3d 455, 690 N.E.2d 1048 (Ill. App. Ct. 1998), in which the Illinois Court of Appeals said, "[W]here the employee is not liable, then it follows that the employer cannot be found liable."  <u>Id.</u>  Based on that statement, the court summarily concluded that the employer of an immune employee was also immune from suit.  <u>Id.</u>  However, <u>Davis</u> based this holding on <u>Kirk v. Michael Reese Hosp. and Med. Ctr.</u>, 117 Ill. 2d 507, 533, 513 N.E.2d 387, 399 (1987), where the Illinois Supreme Court made the unremarkable statement that "[w]here the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty."  <u>Id.</u>  Since <u>Davis</u> relied on nothing more than this statement from <u>Kirk</u> for its

conclusion, the court finds <u>Davis</u> poorly reasoned and unpersuasive on this point.  Finally, Eagle Med relies on <u>Reed v. City and County of Honolulu</u>, 76 Haw. 219, 873 P.2d 98 (1994); but a review of that case shows that it focuses on prosecutorial immunity, rather than the type of statutory immunity at issue here.  Although <u>Reed</u> did state that "if an employee is immune from suit, then the employer is also immune from suit and cannot be held liable," <u>id.</u> at 227, 873 P.2d at 106, that statement was dictum supporting a conclusion that a municipality cannot be held vicariously liable for the torts of its employees under 42 U.S.C. § 1983.  Moreover, the case on which <u>Reed</u> relied for this proposition, <u>Hulsman v. Hemmeter Dev. Corp.</u>, 65 Haw. 58, 61-62, 647 P.2d 713, 717 (1982), was addressing the application of judicial immunity to official acts of a probation officer.  Judicial immunity involves completely different policy concerns than the statutory immunity presented in the case at bar.  Accordingly, the court finds <u>Reed</u> and <u>Hulsman</u> inapposite.

In sum, the court finds that if the Kansas Supreme Court were presented with the question of whether the immunity granted emergency medical workers under K.S.A. 65-6124 inured to the benefit of their employers based on the law of agency, the Kansas court would likely resolve this question under one of two alternative approaches (or perhaps a combination of both).  First, the Kansas Supreme Court would likely extend its holding in <u>Bright</u> to conclude that the immunity conferred by K.S.A. 65-6124 was personal to the emergency medical workers and did not absolve their employers of liability.  In the alternative, the Kansas Supreme Court would likely adopt the majority view, reflected in Restatement (Second) of Agency § 217, that

immunities are personal to agents and employees, and may not be used as a defense for the principal or employer. Under either approach, the result would be the same: any immunity afforded Sellberg, Landgraf, or McGowan under K.S.A. 65-6124 does not shield Eagle Med from vicarious liability for the negligent acts of those employees.

The court finds this result is consistent with the policies undergirding the doctrine of respondeat superior. If societal goals require the employer to bear the risk that its tortfeasor-employee is judgment proof, then, in the absence of a clear legislative statement to the contrary, the employer should also bear the similar risk that its tortfeasor-employee is immune from suit. Eagle Med's motion is accordingly DENIED.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

-22-

IT IS SO ORDERED.

Dated this __31st__ day of March 2005, at Wichita, Kansas.


s/   Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE