IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


AMIE H. GARCIA,                          )
                                         )
                    Plaintiff,           )      **CIVIL ACTION**
                                         )
v.                                       )      No.  04-1159-MLB
                                         )
THE ESTATE OF ROMEO ARRIBAS,             )
M.D., et al.,                            )
                                         )
                    Defendants.          )
_____)

<u>MEMORANDUM AND ORDER</u>

This case comes before the court on defendant Estate of Romeo Arribas' (the Estate's) motion for partial summary judgment. (Doc. 118.)  The motion has been fully briefed and is ripe for decision. (Docs. 119, 133, 134, 135, 138, 139, 142, 143.)  The Estate's motion is GRANTED in part and DENIED in part for reasons set forth herein.

I.  **FACTS AND PROCEDURAL HISTORY**

This is essentially a continuation of a previous case, which was dismissed at the summary judgment stage. <u>Garcia v. Polich</u>, No. 00-1231-MLB, Doc. 383 (D. Kan. Jan. 30, 2004) (<u>Garcia I</u>).  In that case, plaintiff invoked this court's subject matter jurisdiction based on a federal question arising under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.  The court granted summary judgment to defendant St. Catherine Hospital on the EMTALA claim, and declined to exercise supplemental jurisdiction over the remainder of the case, which was based solely on state law claims related to medical malpractice. <u>Garcia I</u>.  Subsequent to that ruling, the case was refiled with Traci Garcia's daughter, Amie Garcia, as the plaintiff.  Amie resides in Texas; therefore, the case arises under

federal diversity jurisdiction.  Unless otherwise noted, the following facts are based on <u>Garcia I</u>.[1]

Traci Garcia, plaintiff's decedent, had her third child by caesarian section on June 3, 1998 at Southwest Medical Center in Liberal, Kansas.  Mrs. Garcia was discharged to home and approximately one week later, she began to experience multiple problems.  On the morning of June 13, she went to the emergency room at Hamilton County Hospital in Syracuse, Kansas.  Mrs. Garcia was admitted to Hamilton County Hospital by Dr. Romeo Arribas.

In the evening hours of June 13, Dr. Arribas contacted Dr. Ann Polich at St. Catherine Hospital in Garden City regarding Mrs. Garcia's situation.  Dr. Polich told Dr. Arribas to send Mrs. Garcia directly to Wichita.  This did not happen.  Instead, Dr. Arribas called Dr. Polich again at approximately 2:00 a.m. on June 14.  Dr. Arribas expressed his opinion that Mrs. Garcia could be cared for at St. Catherine.  Dr. Polich agreed to accept Mrs. Garcia at St. Catherine upon her transfer from Hamilton County Hospital.

Mrs. Garcia arrived at St. Catherine at approximately 3:45 a.m. on June 14, where she was examined in the emergency room by William D. Strampel, D.O., an emergency room physician.  Dr. Strampel's initial diagnosis was Adult Respiratory Distress Syndrome.  He concluded that Mrs. Garcia's condition constituted an emergency and

---

[1] In relying on the facts found in <u>Garcia I</u>, the court expresses no opinion regarding whether <u>Garcia I</u> has any binding effect on this case.  Rather, for sake of convenience, the court simply recounts its own factual summary as provided in <u>Garcia I</u>.  It does not appear that these facts are seriously in dispute.  In any event, should any party feel that reliance on facts from <u>Garcia I</u> is misplaced, they are free to raise the issue when and if it becomes appropriate.

that she needed to be admitted or transferred.  However, because Dr. Strampel was not authorized to admit or transfer Mrs. Garcia, that decision fell to the attending physician, Dr. Polich.

Dr. Strampel called Dr. Polich from the emergency room and reported the situation.  Dr. Polich immediately came to the hospital, arriving at 4:20 a.m.  She examined Mrs. Garcia, reviewed x-rays and available lab test results and spoke with Dr. Strampel.  Both physicians recognized that Mrs. Garcia's situation presented an emergency medical condition.  Plaintiff argues that Mrs. Garcia should have been intubated prior to transfer in order to stabilize Mrs. Garcia's condition.  Dr. Polich knew that if she elected to admit Mrs. Garcia, St. Catherine had the capability to intubate her.  In Dr. Polich's opinion, however, Mrs. Garcia needed complex ventilator management which was not within the capability of St. Catherine. Plaintiff does not dispute Dr. Polich's judgment in this regard.  Dr. Polich determined that Mrs. Garcia was stable and almost immediately ordered her transfer by air to Via Christi Hospital in Wichita.  Via Christi agreed to accept Mrs. Garcia.  There is no issue regarding Via Christi's capacity to treat Mrs. Garcia.

Dr. Polich prepared an acute transfer certificate, which stated that the transfer was based on "further pulmonary evaluation" and that the risks of transfer were "accident/death."  Gregg Garcia, Traci's husband, was told by Dr. Polich that Mrs. Garcia could die.  Gregg signed the consent section of the certificate which read:

Consent to Transfer

> I hereby consent to transfer to another medical facility.
> I understand that it is the opinion of the physician
> responsible for my care that the benefits of transfer

-3-

outweigh the risks of transfer. I have been informed of the risks and benefits upon which this transfer is being made. I have considered these risks and benefits and consent to transfer. I consent to the release of information to the receiving facility and physician as deemed necessary.

In order to effect the transfer, Dr. Polich contacted EagleMed, an air ambulance service. EagleMed apparently had an air ambulance at the Finney County Airport. The aircraft was manned by defendants Douglas Landgraf and Lawrence McGowan, both of whom were registered nurses and mobile intensive care technicians. Sometime around 5:00 a.m. on June 14 Polich spoke by telephone with Landgraf and EagleMed's medical advisor, Dr. Sellberg. Polich informed Sellberg of Traci's condition, after which Sellberg gave Landgraf certain orders regarding Traci's treatment during transport to Wichita. Thereafter, Traci Garcia was transported to Finney County Airport via EMS. (Doc. 42 at 5-6.)

From the airport, Traci was flown to Wichita aboard an EagleMed aircraft. Unfortunately, during the flight she suffered a cardio-pulmonary arrest. Landgraf and McGowan attempted to intubate her, but were unable to secure an airway. They performed CPR on her for the remainder of the flight to Wichita, and the subsequent ground ambulance transport to Via Christi - St. Francis Hospital. Although Traci Garcia survived through June 14th, it appears that her brain function never returned. She was pronounced dead the following day. (Doc. 66 at 10.) Other relevant facts will be incorporated into the analysis of the pending motion.

Plaintiff filed this medical malpractice action against the Estate and other defendants, asserting claims of negligence, gross

-4-

negligence, and wrongful death.  (Pretrial Order (PTO), Doc. 124 at 31.)  In the instant motion, the Estate asserts that plaintiff has failed to come forth with expert testimony to support various claims of medical negligence regarding the care Arribas provided to plaintiff's decedent.  Defendants Drs. Sellberg and Polich responded to the Estate's motion, arguing that they had expert opinions that would show Arribas' negligence, thereby supporting their claims of comparative fault against the Estate.  (Docs. 133, 134.)  In its reply brief, the Estate asserted that its motion was directed only at plaintiff's claims against the Estate; thus, Sellberg and Polich lacked standing to respond.  (Doc. 139 at 3.)  The court allowed Sellberg and Polich to file sur-reply memoranda addressing the standing issue.  (Docs. 142, 143.)

## II.  SUMMARY JUDGMENT STANDARD: FRCP 56

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  In determining whether a genuine issue of material fact exists, the court "view[s] the evidence in a light most favorable to the non-moving party." Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (quotation omitted).  Where, as here, a party seeks summary judgment regarding

-5-

some, but not all, of the facts or issues in the case, Rule 56(d) authorizes the court to craft an order disposing of those issues for which there is no need for a trial.

## III.   ANALYSIS

A.   Response Briefs Filed by Sellberg and Polich

As an initial matter, the court will address the propriety and effect of the briefs filed by Sellberg and Polich.  In their sur-replies, both doctors stated that the purpose of their involvement in this motion was merely to preserve their right to compare fault with Arribas.   Under similar circumstances, other Kansas courts have allowed defendants to respond to a co-defendant's motion for summary judgment directed at the plaintiff for the purpose of preserving their claims of comparative fault.  See, e.g., Stadtherr v. Elite Logistics, Inc., No. Civ. 00-2471-JAR, 2002 WL 975900 (D. Kan. Mar. 26, 2002); Hull v. Agustin, 22 Kan. App. 2d 464, 918 P.2d 651 (1996).  None of these cases suggest that such action is mandatory in order to preserve the right to compare fault.  Likewise, the court expresses no opinion on the necessity for defendants to respond to a co-defendant's summary judgment motion aimed at other parties, when the sole purpose for the defendants' response is to preserve their right to compare fault with the movant.  Rather, the court simply finds that such responses are not inappropriate.  However, since the Estate's motion is not directed at Sellberg or Polich, the court will not consider the facts or arguments presented in their briefs except to the extent plaintiff specifically adopted them.  See Hull, 22 Kan. App. 2d at 466-67, 918 P.2d at 652-53.

In her response, plaintiff specifically adopted and incorporated

-6-

the following portions of Sellberg's response brief:

> Sellberg's Response to Arribas Statement of
> Uncontroverted Facts at 1. through 7.;
> Sellberg's Statement of Additional Facts Which
> Raise Genuine Issues of Material Fact
> at 2., 3., 4., 7., 8., 9., 11. and 12.;
> Standard For Summary Judgment;
> Argument and Authorities at III. and IV.; and
> Conclusion.

(Doc. 135 at 2.) Accordingly, the court will consider those portions of Sellberg's brief as if included in plaintiff's response. By contrast, plaintiff did not adopt anything from Polich's brief. Hence, the court will not consider any part of that brief in deciding the Estate's motion.

B.  The Estate's Motion

The Estate charges that plaintiff has failed to come forth with expert testimony to support several contentions of negligence alleged against Arribas by plaintiff in the pretrial order. Those contentions are embodied in the pretrial order as follows:

> 11.  More specifically, plaintiff contends
> defendant Arribas was negligent in the following
> particulars:
>
> a. Failure to perform pelvic (vaginal) exam in
> the Emergency Room with history of post C-section
> and foul drainage;
>
> b. Failure to perform pelvic and/or rectal exam
> later on 06/13/98 when patient's abdominal pain
> increased, breathing worsened and drainage
> returned;
>
> . . . .
>
> d. Failure to forward patient to Garden City for
> CT of abdomen;
>
> e. If not on presentation, then by 1500 when
> breathing worsened and pain continued;
>
> . . . .

      h. Failure to use availability of tele-radiology
for a radiologist's interpretation in face of a
seriously ill patient;

. . . .

l. Failure to have chest x-ray repeated
periodically as patient's breathing difficulties
increased;

m. Failure to clinically exam a seriously ill
patient with Traci Garcia's history and physical
exam between 10:30 a.m. and 8:00 p.m.

(PTO at 38-39.)   Plaintiff concedes that summary judgment is
appropriate as to paragraphs 11(d) and 11(e). (Doc. 135 at 2.)  She
opposes the Estate's motion, in part, by adopting those portions of
Sellberg's brief mentioned <u>supra</u>.  In addition, plaintiff attempts to
rely on contentions of fault expressed against Arribas by other
defendants in the pretrial order. <u>Id.</u> at 2-3.  First, contentions are
not facts.  Contentions, by themselves, cannot create genuine issues
of material fact that would preclude summary judgment.  Moreover,
plaintiff cites contentions set forth by other defendants.  These are
not plaintiff's contentions, and she cannot rely on them in any event.
Accordingly, disposition of this motion must turn on those portions
of Sellberg's brief adopted by plaintiff.

      Turning to the merits of the Estate's motion, this is an action
based on diversity of citizenship.  The case involves medical
negligence and wrongful death, with all material events occurring
within the state of Kansas.  There appears to be no dispute that
Kansas law applies to the substance of plaintiff's claims.  (PTO at
2.)

      In a medical malpractice case, Kansas law requires the plaintiff
to establish the standard of care applicable to the circumstances of

-8-

the case, to show that the defendant deviated from that standard of care, and that the deviation caused or contributed to the victim's injuries. <u>Nold v. Binyon</u>, 272 Kan. 87, 103-04, 31 P.3d 274, 285 (2001); <u>Sharples v. Roberts</u>, 249 Kan. 286, 295, 816 P.2d 390, 397 (1991). With rare exceptions not applicable here, plaintiff must establish all three elements through expert testimony. <u>Nold</u>, 272 Kan. at 103-04, 31 P.3d at 285.

The first two disputed contentions address Arribas' failure to perform pelvic and rectal examinations on plaintiff's decedent. (Doc. 119 at 3.) Dr. Paul Harrison, an expert witness in the case, opined that the failure to so examine the patient amounted to a deviation from the standard of care. (Docs. 119 at 3; 133 at 2-3; 139 at 2.) However, the Estate argues that plaintiff lacks evidence of causation on this point.

Both plaintiff and the Estate point to Dr. Harrison's deposition as evidence in support of their respective positions. (Docs. 119 at 3; 133 at 2.) While being examined by the Estate, Dr. Harrison provided the following response:

> Q. Okay. All right. If Doctor Arribas had performed a pelvic exam at the time that the patient was admitted or shortly thereafter at Hamilton County, do you have an opinion as to whether or not that would have changed the patient's chance of survival?
>
> . . . .
>
> A. Not knowing what he may or may not have found, its' - I'm going to have to say I don't know for sure.

(Doc. 133 exh. A, dep. of Dr. Harrison, at 75-76.) Additionally, plaintiff relies on the report of another expert, Dr. Steven Q.

Simpson, for essentially the same criticism of Arribas. However, Dr. Simpson's only opinion regarding causation was the overall view that Arribas' delay in transferring plaintiff's decedent reduced her likelihood of recovery. (Docs. 119 exh. B, Dr. Simpson's report, at 2; 133 at 2.)

Even though both Dr. Harrison and Dr. Simpson concluded that Arribas deviated from the standard of care by not performing pelvic examinations, they have failed to offer opinions that these deviations caused or contributed to the patient's demise. Dr. Harrison's deposition makes perfectly clear that he has no idea whether a pelvic exam would have made any difference in the patient's outcome. Likewise, Dr. Simpson's global opinion that Arribas' delay in transferring the patient reduced her chance of recovery lacks a sufficient connection to the pelvic examination. No one knows what a pelvic examination would have revealed. Plaintiff's evidence is just too speculative on this point.

In order to satisfy her burden of proof on causation,

> plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. <u>A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture</u>, or the probabilities are at best evenly balanced, <u>it becomes the duty of the court to direct a verdict for the defendant</u>.

<u>Baker v. City of Garden City</u>, 240 Kan. 554, 559, 731 P.2d 278, 282 (1987) (quoting Prosser and Keeton on Torts § 41, pp. 269-70 (5th ed. 1984)) (emphasis added). This rule is equally applicable at the summary judgment stage. <u>See</u> <u>Roberson v. Counselman</u>, 235 Kan. 1006,

-10-

1010-11, 686 P.2d 149, 152-53 (1984).  Here, any conclusion that Arribas' failure to perform a pelvic and/or rectal exam reduced the patient's chance of survival must be based solely on conjecture since not one person has the slightest idea what such an examination would have revealed.  The Estate is entitled to summary judgment on these two contentions.

The Estate also disputes the contention that Arribas' failure to examine the patient for approximately nine and a half hours amounted to negligence.  (Doc. 119 at 5.)  A review of the evidence cited by plaintiff, including the reports of Drs. Harrison and Simpson, shows no expert opinion suggesting that this aspect of Arribas' treatment deviated from the standard of care.  (Doc. 133 at 5-7.)  Accordingly, the Estate is entitled to summary judgment on this contention.

With the respect to the remaining disputed contentions, which relate to x-rays and their interpretation, the court finds that these matters lie at the heart of the dispute.  The evidence seems pretty clear that Traci Garcia died because of respiratory problems.  Arribas' conduct in obtaining and interpreting chest x-rays may well have been critical in his determination of when to transfer her to a more capable facility.  The expert evidence on these matters is sufficient to create a triable fact.  The Estate's motion is therefore DENIED as to these contentions.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or

-11-

applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   25th   day of January 2006, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE